**Exhibit A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| David Daggett, et al., | |
| Plaintiff, | Case No. 1:23-cv-11527 |
| v. | |
| Waters Corporation, et al., | **CLASS ACTION** |
| Defendants. | **SETTLEMENT AGREEMENT** |

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This Class Action Settlement Agreement, dated September 27, 2024 (the "Settlement Agreement"), is made and entered into by and among: (i) Plaintiff David Daggett (on behalf of himself and each Class Member and the Waters Employee Investment Plan), by and through his counsel of record in the litigation; and (ii) Waters Corporation, Waters Technologies Corporation, the Board of Directors of Waters Technologies Corporation, and the Employee Benefits Administrative Committee of Waters Technologies Corporation[1], by and through their counsel of record in the litigation. The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle Plaintiffs' Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Settlement Agreement.

## ARTICLE 1 – DEFINITIONS

1.1    "Action" means the civil action captioned *Daggett, et al. v. Waters Corporation, et al.*, Civil Action No. 1:23-cv-11527 (D. Mass.), pending in the United States District Court for the

---

[1] The Complaints name the "Employee Benefits **Administration** Committee of Waters Technologies Corporation" as a defendant. (emphasis added). The correct name of this entity is the Employee Benefits Administrative Committee of Waters Technologies Corporation, and that name used throughout this Agreement. Except as otherwise specified, all capitalized terms shall have the meanings set forth in Article I of this Settlement Agreement.

District of Massachusetts.

1.2    "Alternate Payee" means a person, other than a Participant Class Member, Former Participant Class Member, or Beneficiary, who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order ("QDRO"), where the QDRO relates to a Participant Class Member or Former Participant Class Member's balance during the Class Period.

1.3    "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the costs and expenses incurred by Class Counsel in connection with the Action, including the investigation leading to it, which shall be recovered from the Gross Settlement Amount.

1.4    "Average Qualifying Account Balance" has the meaning ascribed to it in Section 5.3(b)(i) herein.

1.5    "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of a Participant Class Member or Former Participant Class Member, other than an Alternate Payee. A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

1.6    "Board" means the Board of Directors of Waters Technologies Corporation.

1.7    "Business Days" refers to the days between Monday and Friday of each week and excludes the "Legal Holidays" specified in Federal Rule of Civil Procedure 6(a)(6).

1.8    "CAFA Notice" means the notice required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

1.9    "Class" or "Settlement Class" means the following class to be certified by the Court for settlement purposes:

> All participants and beneficiaries of the Waters Employee Investment Plan (excluding the Defendants or any participant/beneficiary who served on the

Fiduciary Committees) beginning July 7, 2017, and running through the date of the Preliminary Approval Order.

1.10    "Class Counsel" means Walcheski & Luzi, LLC and Jonathan Feigenbaum, Esq..

1.11    "Class Member" means a member of the Class.

1.12    "Class Period" means July 7, 2017 through the date of the Preliminary Approval Order, inclusive.

1.13    "Company" means Waters Technologies Corporation.

1.14    "Complaints" means the original Complaint filed in this Action at ECF No. 1 on July 7, 2023 and the Amended Complaint filed at ECF No. 19 on October 12, 2023.

1.15    "Court" means the United States District Court for the District of Massachusetts.

1.16    "Defendants" means Waters Corporation, Waters Technologies Corporation, the Board of Directors of Waters Technologies Corporation, and the Employee Benefits Administrative Committee of Waters Technologies Corporation, each individually a Defendant.

1.17    "Defendants' Counsel" means Goodwin Procter LLP.

1.18    "Defendants' Released Claims" means all claims, whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Action or in any court or forum, by Defendants against the Named Plaintiff or any Class Members or their attorneys (including Class Counsel), which arise out of the institution, prosecution or settlement of the Action, except for claims to enforce the Settlement Agreement.

1.19    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.20    "Escrow Account" means an account at an established financial institution that is established for the deposit of the Gross Settlement Amount and amounts relating to it, such as income earned on the investment of the Gross Settlement Amount.

3

1.21    "Escrow Agent" means Analytics Consulting LLC, an independent contractor to be retained by Class Counsel and the Settlement Administrator, which will serve as escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement.

1.22    "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.

1.23    "Final Approval" means the entry of the Final Approval Order.

1.24    "Final Approval Order" means the order of the Court granting final approval of the Settlement, in substantially the form submitted in connection with the Named Plaintiff's Motion for Final Approval of the Settlement.

1.25    "Final Entitlement Amount" means the total portion of the Net Settlement Amount payable to an individual Class Member, as determined according to the procedures described in Article V herein.

1.26    "Former Participant Class Member" means any Class Member who had a Plan account with a balance greater than $0.00 at any point during the Class Period but who does not have a Plan account with a balance greater than $0.00 as of the date of the Preliminary Approval Order.

1.27    "Former Participant Rollover Form" means the form described generally in Section 5.5 herein, substantially in the form attached as Exhibit 3 hereto.

1.28    "Former Participant Rollover Form Deadline" means a date fourteen (14) calendar days prior to the Fairness Hearing, unless otherwise specified by the Court.

1.29    "Gross Settlement Amount" means the sum of eight-hundred thousand U.S. dollars (USD $800,000.00), contributed to the Qualified Settlement Fund as described in Article IV herein. The Gross Settlement Amount shall be the full and sole monetary payment to the Named Plaintiff, Class Members, and Class Counsel made on behalf of Defendants in connection with this Settlement Agreement.

1.30    "Independent Fiduciary" means the person or entity selected by the Company to serve as an independent fiduciary with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2 herein.

1.31    "Individual Fiduciary Committee Members" means members of the Fiduciary Committees during the Class Period.

1.32    "Individual Board Members" means members of the Board during the Class Period.

1.33    "Investment Claim" means the Named Plaintiff's claim, as asserted in the Complaints, with respect to the Fidelity Freedom Funds.

1.34    "Investment Claim Entitlement Amount" means the portion of the Net Settlement Amount payable to a Class Member with respect to the Investment Claim, as determined according to the procedures described in Article V herein.

1.35    "Fiduciary Committees" means both the Employee Benefits Administrative Committee of Waters Technologies Corporation and the Employee Benefits Investment Committee of Waters Technologies Corporation.

1.36    "Fidelity Freedom Funds" means Fidelity Freedom Fund Class K suite of thirteen (13) target date funds offered as investment options in the Plan from the start of the Class Period to February 4, 2022.

1.37    "Named Plaintiff" means David Daggett.

1.38    "Net Settlement Amount" means the Gross Settlement Amount, plus any interest or income earned on the Qualified Settlement Fund, minus: (a) taxes and tax-related expenses as contemplated in Section 4.6; (b) all Attorneys' Fees and Costs approved by the Court; (c) any Service Award approved by the Court; (d) all Settlement Administrative Expenses approved by the Court; and (e) any contingency reserve not to exceed an amount to be mutually agreed upon by the Parties and approved by the Court that is set aside by the Settlement Administrator for: (1) Settlement Administrative Expenses incurred before the Settlement Effective Date but not yet paid, and (2) Settlement Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period.

1.39    "Notices" means the Court-approved notices of this Settlement Agreement that are disseminated to Class Members. The Parties shall propose that the Court approve the forms of notice attached as Exhibits 1 and 2 hereto. The Notice to Former Participant Class Members will include the Former Participant Rollover Form (Exhibit 3).

1.40    "Non-Rollover-Electing Former Participant" means a Former Participant Class Member who has not submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court, or whose Former Participant Rollover Form is rejected by the Settlement Administrator.

1.41    "Participant Class Member" means any Class Member who had a Plan account with a balance greater than $0.00 at any point during the Class Period, and, as of the date of the Preliminary Approval Order, had a Plan account with a balance greater than $0.00.

1.42    "Parties" means the Named Plaintiff and Defendants.

1.43    "Plaintiffs' Released Claims" means, subject to the exclusions set forth below, any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses,

costs, and causes of action, including both known and Unknown Claims, whether class, derivative, or individual in nature against any of the Released Parties and Defense Counsel with respect to the Plan arising on or before the Settlement Effective Date:

(a)     that were asserted in the Action or could have been asserted in the Action based on any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints, including but not limited to those that arise out of, relate to, are based on, or in connection with: (1) the structure, management, or monitoring of the Plan's investment options, including without limitation the Waters Stock Fund and any self-directed brokerage option; (2) the selection, monitoring, oversight, retention, fees, expenses, or performance of the investments available under the Plan; (3) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's service providers, including without limitation administrative and/or recordkeeping service providers; (4) fees, costs, or expenses charged to, paid, or reimbursed by, or authorized to be paid or reimbursed by the Plan, including any assertions regarding revenue sharing paid, received, or not recaptured in connection with the Plan; and/or (5) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; (6) disclosures, filings or failures to disclose information regarding the Plan's investment options or service providers; (7) disclosures or failures to disclose relationships among fiduciaries, service providers, and investment managers for the Plan; (8) engaging in self-dealing or prohibited transactions in relation to the Plan's investments or service providers; (9) compliance with the Plan's governing documents with respect to the selection and monitoring of the Plan's investments or service providers; (10) any assertions with respect to any

7

fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; and/or (11) the approval by the Independent Fiduciary of the Settlement Agreement;

(b)    that would be barred by res judicata based on the Court's entry of the Final Approval Order;

(c)    that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d)    that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Plaintiffs' Released Claims: (i) claims to enforce the Settlement Agreement, and (ii) individual claims for denial of benefits from the Plan.

1.44    "Plan" means the Waters Employee Investment Plan.

1.45    "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount as described in Article V herein.

1.46    "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form submitted in connection with the Named Plaintiff's motion for entry of Preliminary Approval Order.

1.47    "PTE 2003-39" means U.S. Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.48    "Qualified Domestic Relation Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other

dependent of a Class Member and which has been determined qualified pursuant to the Plan's procedures.

1.49    "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent as described in Article IV herein.

1.50    "Released Parties" means (a) each Defendant, Individual Fiduciary Committee Member, and Individual Board Member; (b) each Defendant's past, present, and future parent corporation(s), affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and any individual, partnership, corporation, or any other form of entity or organization that controls, is controlled by, or is under common control with any of the foregoing; (c) with respect to (a) and (b) above, all of their past, present, and future parent corporation(s), affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, employee benefit plan fiduciaries (with the exception of the Independent Fiduciary), shareholders, officers, directors, partners, agents, managers, members, employees, representatives, attorneys, administrators, heirs, executors, and all persons acting under, by, through, or in concert with any of them; and (d) the Plan and any and all administrators, fiduciaries, parties in interest, and trustees of the Plan.

1.51    "Recordkeeping Claim" means the Named Plaintiff's claim, as asserted in the Complaints, with respect to the Plan's recordkeeping and administrative expenses.

1.52    "Recordkeeping Claim Entitlement Amount" means the portion of the Net Settlement Amount payable to an individual Class Member with respect to the Recordkeeping Claim, as determined according to the procedures described in Article V herein.

1.53    "Rollover-Electing Former Participant Class Member" means a Former Participant Class Member who has submitted a completed, satisfactory Former Participant Rollover Form by

the Former Participant Rollover Form Deadline set by the Court and whose Former Participant

Rollover Form is accepted by the Settlement Administrator.

1.54    "Service Award" means any incentive or service award approved by the Court to

the Named Plaintiff for his service as class representative.

1.55    "Settlement" means the settlement of the Action contemplated by this Settlement

Agreement.

1.56    "Settlement Administrative Expenses" means all expenses incurred in the

implementation and administration of this Settlement Agreement and the Plan of Allocation,

including but not limited to (a) all fees, expenses, and costs associated with the production and

dissemination of the Notices to Class Members; (b) all fees, expenses, and costs associated with

the production and dissemination of the CAFA Notices described in Sections 1.8 and 3.1; (c) all

fees, expenses, and costs associated with the collection of Settlement Class member data from the

Plan's recordkeeper, the delivery of such data to the Settlement Administrator, and any functions

performed the by Plan's recordkeeper and/or trustee in connection with the implementation and

administration of this Settlement Agreement and the Plan of Allocation; (d) tax expenses related

to the settlement (including taxes and tax expenses described in Section 4.6); (e) all expenses

incurred by the Settlement Administrator in administering and effectuating this settlement,

including all costs associated with the calculations pursuant to the Plan Of Allocation; and (f) all

fees and expenses charged by the Independent Fiduciary and Escrow Agent.  All Settlement

Administrative Expenses approved by the Court and taxes and tax-related Settlement

Administrative Expenses pursuant to Section 4.6 shall be paid from the Gross Settlement Amount.

The Parties agree that the recordkeeper, trustee, and Defendants will not be exercising any

discretion when performing functions pertaining to the implementation and administration of the Settlement Agreement and Plan of Allocation.

1.57    "Settlement Administrator" means Analytics Consulting LLC, an independent contractor to be retained by Class Counsel and approved by the Court.

1.58    "Settlement Agreement" means the compromise and resolution embodied in this agreement and its exhibits.

1.59    "Settlement Effective Date" means one business day following the later of (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (b) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, and all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

1.60    "Settlement Period" shall be the period from the Settlement Effective Date and continuing for a period of nine months thereafter.

1.61    "Settlement Website" means the internet website established by the Settlement Administrator as described in Section 3.3 herein.

1.62    "Unknown Claims" means any and all Plaintiffs' Released Claims which the Named Plaintiff or the Class Members do not know or suspect to exist as of the Settlement Effective Date, which if known might have affected their decision(s) with respect to the Settlement.

**ARTICLE 2 – SETTLEMENT APPROVAL**

**2.1**    <u>Preliminary approval by Court</u>. On or before September 30, 2024, the Named Plaintiff, through Class Counsel, shall apply to the Court for entry of the Preliminary Approval Order, in substantially the form attached hereto as Exhibit 4, which shall include, among other provisions, a request that the Court:

a.    Certify the Settlement Class for settlement purposes under Rule 23(b)(1) of the Federal Rules of Civil Procedure;

b.    Approve the text of the Settlement Notices for transmission to Class Members and the Former Participant Rollover Form for mailing to Former Participant Class Members;

c.    Order the Settlement Administrator to (i) transmit a Settlement Notice to each Participant Class Member by email or, if no email address is available, by first class mail and (ii) email or mail by first class mail a Settlement Notice and a Former Participant Rollover Form to each Former Participant Class Member, all as identified by the Settlement Administrator based upon the data provided by the Plan's recordkeeper;

d.    Find that emailing or mailing the Settlement Notices constitutes the best notice practicable under the circumstances, provides due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and complies fully with the requirements of Fed. R. Civ. P. 23 and applicable law;

e.    Preliminarily enjoin each Class Member and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, agents, attorneys, predecessors, successors, and assigns, from suing Defendants, the Plan, or the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Action and the Released Claims;

f.      Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against the Defendants, the Released Parties, or the Plan;

g.      Set the Fairness Hearing for no sooner than one hundred twenty (120) calendar days after the date of the Preliminary Approval Order, in order to determine whether (i) the Court should approve the Settlement as fair, reasonable, and adequate, (ii) the Court should enter the Final Approval Order, and (iii) the Court should approve the requested Attorneys' Fees and Costs, Settlement Administrative Expenses, and the Service Award;

h.      Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been timely sent to Class Counsel and Defense Counsel. To be timely sent, the objection and any supporting documents must be sent to Class Counsel and Defense Counsel at least twenty-eight (28) calendar days prior to the scheduled Fairness Hearing;

i.      Provide that any party may file a response to an objection by a Class Member at least fourteen (14) calendar days before the Fairness Hearing;

j.      Set a deadline of no later than fourteen (14) calendar days before the Fairness Hearing by which each Former Participant Class Member must submit a Former Participant Rollover Form to the Settlement Administrator in order to receive their distribution in the form of a rollover pursuant to the Plan of Allocation; and

k.      Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court.

**2.2**    <u>Review by Independent Fiduciary</u>. The Company shall select and retain the Independent Fiduciary, on behalf of the Plan, to determine whether to approve and authorize the settlement of Plaintiffs' Released Claims on behalf of the Plan.

a.    The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

b.    The Independent Fiduciary shall notify the Company of its determination in writing (with copies to Class Counsel and Defendants' Counsel) and in accordance with PTE 2003-39, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

c.    The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

d.    All fees and expenses associated with the Independent Fiduciary's retention and determination shall be considered Settlement Administrative Expenses.

**2.3**    <u>Final approval by Court</u>. No later than fourteen (14) calendar days before the Fairness Hearing, or by such other deadline as specified by the Court, Class Counsel shall apply to the Court for entry of the Final Approval Order, in substantially the form attached hereto in Exhibit 6, which shall include, among other provisions, a request that the Court:

a.    determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Class Members;

b.    dismiss the Action with prejudice and without costs, except as contemplated by this Settlement Agreement;

c.      decree that neither the Final Approval Order nor this Settlement Agreement constitutes an admission by any Defendant or Released Party of any liability or wrongdoing;

d.      bar and enjoin all Class Members from asserting any of Plaintiffs' Released Claims against any of the Released Parties; and

e.      preserve the Court's continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Final Approval Order.

## ARTICLE 3 – SETTLEMENT ADMINISTRATION

**3.1**      CAFA Notice. No later than ten (10) calendar days after the Named Plaintiff's filing of this Settlement Agreement and motion for entry of the Preliminary Approval Order with the Court, the Settlement Administrator shall provide appropriate notice of this Settlement Agreement to the Attorney General of the United States and to the Attorneys General of all states in which Class Members reside, as specified in 28 U.S.C. § 1715(b).  The costs of such notice shall be considered an Administrative Expense.  Upon completing such notice, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel.  A proposed form of this Notice shall be at attached to the Preliminary Approval Motion in substantially the form attached hereto as Exhibit 5.

**3.2**      Notice to Class Members.

a.      The Plan's recordkeeper or its designee shall provide the Settlement Administrator with all information necessary to send the Settlement Notices and carry out the Plan of Allocation no later than ten (10) Business Days before the Notices are to be distributed.

        i.      The Settlement Administrator shall use the data provided by the Company or the Plan's recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

        b.      No later than forty (55) calendar days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator shall send the Notices by email or first-class mail, postage prepaid to Class Members.

        c.      The Notices shall be in the form approved by the Court, which shall be in substantially the form attached as Exhibits 1 and 2 hereto. The Notice to Former Participant Class Members will include the Former Participant Rollover Form.

        d.      A Notice shall be sent to (i) the email address on file with the Plan's recordkeeper for all Participant Class Members, or if no email address is on file, then the last known address of each Participant Class Member and (ii) the last known address of each Former Participant Class Member, each as provided by the Plan's recordkeeper (or its designee), unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known address provided by the Plan's recordkeeper (or its designee).

        e.      The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and mail such Notices to those Class Members one additional time.

**3.3**    <u>Settlement Website.</u>

        a.      On or before the date that the Notices are mailed, or by such other deadline as specified by the Court, the Settlement Administrator shall establish the Settlement Website. The Settlement Administrator shall maintain the Settlement Website until no later than one year after the Settlement Effective Date or sixty (60) calendar days after the receipt of the notice(s)

referenced in Section 5.7, whichever is earlier, at which point the Settlement Administrator shall take down the Settlement Website.

b.      The Settlement Website shall contain a copy of the Settlement Agreement, Notices, Former Participant Rollover Form, the operative Amended Complaint (ECF No. 19), and all documents filed with the Court in connection with the Settlement.

c.      The Settlement Website shall also include a toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly with questions about the settlement.

3.4      <u>Distribution of Net Settlement Amount.</u> Within forty-two (42) calendar days of the Settlement Effective Date, the Settlement Administrator shall distribute the Net Settlement Amount to Class Members in accordance with the Plan of Allocation as described in Article V herein.

3.5      <u>Maintenance of records</u>. The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide the same to Class Counsel and Defendants' Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by the Named Plaintiff, Defendants, Class Counsel, or Defendants' Counsel relating to the administration of the Settlement Agreement.

3.6      <u>Tax Reporting</u>. The Settlement Administrator shall be responsible for reporting to the Internal Revenue Service any taxable distributions made to Class Members pursuant to the Settlement.

**3.7**    No liability. Named Plaintiff, Defendants, Individual Fiduciary Committee Members, Individual Board Members, Defendants' Counsel, Class Counsel, and the Released Parties shall have no responsibility for, interest in, or liability whatsoever, with respect to:

a.    any act, omission, or determination of the Settlement Administrator;

b.    the management, investment, or distribution of the Qualified Settlement Fund; or

c.    the calculation, administration, determination, verification, confirmation or payment of any claims asserted against the Qualified Settlement Fund.

### ARTICLE 4 – ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

**4.1.1**    Establishment of the Qualified Settlement Fund. No later than ten (10) Business Days after entry of the Preliminary Approval Order, the Escrow Agent shall establish an escrow account. The Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of U.S. Department of Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1). In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**4.2**    Funding of the Qualified Settlement Fund. In consideration of all the promises and agreements set forth in the Settlement Agreement, the Company will contribute the Gross Settlement Amount to the Qualified Settlement Fund. No other Defendant shall have any obligation to contribute financially to the Qualified Settlement Fund or any other Settlement-

related expenses. The Company shall contribute the Gross Settlement Amount to the Qualified Settlement Fund in the following manner:

a.      No later than twenty-eight (28) calendar days after the later of (i) the date the Preliminary Approval Order is entered, or (ii) the escrow account described in Section 4.1 is established and the Escrow Agent shall have furnished to Defendants in writing the escrow account name, IRS W-9 form, and all necessary wiring instructions, the Company shall deposit, or cause to be deposited by its insurer(s), $80,000.00 into the Qualified Settlement Fund.

b.      No later than thirty (30) calendar days after entry of the Final Approval Order, the Company shall deposit, or cause to be deposited by its insurer(s), the remaining $720,000.00 of the Gross Settlement Amount into the Qualified Settlement Fund.

4.3      Notwithstanding anything to the contrary in this Settlement Agreement, in no event shall the Company or any of the Defendants be required to make payments or incur any expenses in excess of the Gross Settlement Amount. The Gross Settlement Amount shall be the only amount paid by Defendants under this Settlement Agreement, and Defendants shall not be obligated to make any other payments under this Settlement Agreement or in connection with this Settlement including but not limited to any other payments that the Named Plaintiff or Class Members may claim they are entitled to under the Plan as a result of this Settlement.

4.4      Qualified Settlement Fund administrator. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 468B) and the regulations promulgated thereunder, the administrator of the Qualified Settlement Fund shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for

19

the Qualified Settlement Fund and filing the returns described in 26 C.F.R. § 1.468B-2(k)). Such

returns, as well as the election described in Section 4.1, shall be consistent with this Article and,

in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the

income earned by the Gross Settlement Amount shall be deducted and paid from the Gross

Settlement Amount as described in Section 4.6 herein.

      **4.5**    <u>Investment of the Qualified Settlement Fund</u>. The Escrow Agent shall invest the

Qualified Settlement Fund in short-term United States agency or Treasury securities or other

instruments backed by the full faith and credit of the United States Government or an agency

thereof, or fully insured by the United States Government or an agency thereof, and shall reinvest

the proceeds of these investments as they mature in similar instruments at their then-current market

rates.

      **4.6**    <u>Taxes on the income of the Qualified Settlement Fund</u>. All taxes on any income of

the Qualified Settlement Fund and expenses and costs incurred in connection with the taxation of

the Qualified Settlement Fund (including, without limitation, expenses of tax attorneys and

accountants) are Settlement Administrative Expenses and shall be timely paid by the Escrow Agent

out of the Qualified Settlement Fund. The Escrow Agent, or the Settlement Administrator on its

behalf, shall be responsible for making provision for the payment from the Qualified Settlement

Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and

for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed

from it. Defendants, the Named Plaintiff, Individual Fiduciary Committee Members, Individual

Board Members, Defendants' Counsel, and Class Counsel have no responsibility or any liability

for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of

the Qualified Settlement Fund. The Escrow Agent shall be obligated (notwithstanding anything

herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither Defendants, Defendants' Counsel, nor Class Counsel are responsible for the same nor shall they have any liability therefor. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article IV.

      **4.7**    The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defendants' Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

      **4.8**    After the Settlement Effective Date, the Gross Settlement Amount will be distributed from the Qualified Settlement Fund as follows:

      a.    Attorneys' fees, costs and expenses shall be payable to Class Counsel out of the Qualified Settlement Fund after the Settlement Effective Date;

      b.    Any Service Award shall be payable from the Qualified Settlement Fund and shall be in addition to any portion of the Net Settlement Fund that the Named Plaintiff would other be entitled to receive a member of the Settlement Class. Any Service Award will only be distributed after the Settlement Effective Date;

      c.    All Settlement Administrative Expenses approved by the Court shall be paid out of the Qualified Settlement Fund after the Settlement Effective Date;

d.  the Net Settlement Amount will be distributed pursuant to the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund. A contingency reserve not to exceed an amount to be mutually agreed upon by the Parties and approved by the Court may be set aside by the Settlement Administrator for: (1) Settlement Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Settlement Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period.

**4.9**    The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. Defendants, the Named Plaintiff, Defendants' Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

**4.10**    No later than February 15 of the year following the calendar year in which the Company or its agents make a transfer to the Qualified Settlement Fund pursuant to the terms of this Article IV, the Company or its agents shall timely furnish a statement to the Escrow Agent, or the Settlement Administrator on its behalf, that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468(e)(2)(ii), and shall attach a copy of the statement to their federal income tax returns filed for the taxable year in which the Company or its agents make a transfer to the Qualified Settlement Fund.

## ARTICLE 5 – PLAN OF ALLOCATION

**5.1**    <u>Calculation of payments to Class Members.</u> Payments to Class Member shall be calculated by the Settlement Administrator based on information provided by the Plan's recordkeeper.

**5.2**    <u>Amount Allotted for each claim.</u> The Settlement Administrator shall first divide the Net Settlement Amount amongst the Recordkeeping Claim and Investment Claim as follows:

a.    Recordkeeping Claim: 10% of Net Settlement Amount

b.    Investment Claim: 90% of Net Settlement Amount

**5.3**    <u>Calculation of each Class Member's Final Entitlement Amount.</u> The Settlement Administrator will then determine each Class Member's Final Entitlement Amount through the following formula:

a.    Recordkeeping Claim Entitlement Amount:

i.    To calculate each Class Member's Recordkeeping Claim Entitlement Amount, the Settlement Administrator shall determine the number of quarters that each individual maintained a balance in the Plan above $0.00 from July 7, 2017 through June 30, 2024. Each quarter will represent one point for that individual, including any balance from July 7, 2017 through September 30, 2017.  The maximum number of points that a participant may receive is 28.

ii.    The Settlement Administrator shall then divide each individual's points by the sum of the points of all Class Members.

iii.    The Settlement Administrator shall then determine each Class Member's Recordkeeping Claim Entitlement Amount by taking the percentage calculated in 5.3(a)(ii) and multiplying it by 10% of the Net Settlement Amount.

b.      Investment Claim Entitlement Amount:

     i.     For each Class Member, the Settlement Administrator shall determine an Average Qualifying Account Balance, defined as follows:

> Each Class Member's average, aggregate quarter-ending account balance invested one or more Freedom Fund in Plan for the period of July 7, 2017 to February 4, 2022.[2]

     ii.     The Settlement Administrator shall then determine each Class Member's Investment Claim Entitlement Amount by calculating each individual's pro rata share of 90% of the Net Settlement Amount, based on their Average Qualifying Account Balance compared to the sum of all Class Members' Average Qualifying Account Balances.

c.      The Settlement Administrator will then determine each Class Member's Final Entitlement Amount by adding their Recordkeeping Claim Entitlement Amount and Investment Claim Entitlement Amount.

d.      If the Final Entitlement Amount of the settlement payment to a Former Participant Class Member is calculated by the Settlement Administrator to be less than $10.00, then that Former Participant Class Member's pro-rata share of the Net Settlement Amount shall be zero for all purposes. The Settlement Administrator shall then remove any Former Participant Class Members whose Final Entitlement Amount was less than $10.00 and repeat the calculation outlined in Section 5.3 with the remaining Class Members

---

[2] Mathematically stated, the *Average Qualifying Account Balance* shall be calculated as follows: ((Q3 2017 Account Balance * (86/92)) + (Q4 2017 Account Balance) + (Q1 2018 Account Balance) + (Q2 2018 Account Balance) + (Q3 2018 Account Balance) + (Q4 2018 Account Balance) + (Q1 2019 Account Balance) + (Q2 2019 Account Balance) + (Q3 2019 Account Balance) + (Q4 2019 Account Balance) + (Q1 2020 Account Balance) + (Q2 2020 Account Balance) + (Q3 2020 Account Balance) + (Q4 2020 Account Balance) + (Q1 2021 Account Balance) + (Q2 2021 Account Balance) + (Q3 2021 Account Balance) + (Q4 2021 Account Balance) + (Q1 2022 Account Balance * (36/90))) *Divided by* 19.33 (i.e., the total number of quarters subject to the Investment Claim).

e.     The total of all Final Entitlement Amounts may not exceed the Net Settlement Amount. In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan of Allocation would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan of Allocation does not exceed the Net Settlement Amount.

**5.4**     Payments to Participant Class Members.

a.      Upon completing the calculation of each Class Member's Final Entitlement Amount and no later than twenty-one (21) calendar days following the Settlement Effective Date, the Settlement Administrator shall provide the Company (or its designee), Class Counsel, Defendants' Counsel, and the Plan's recordkeeper information in a mutually agreeable format concerning each Participant Class Member's Final Entitlement Amount, and any other information requested by the Company or the Plan's recordkeeper as necessary to effectuate this Article.

b.     No later than fourteen (28) calendar days after receiving the information described in Section 5.4(a) herein, the Plan's recordkeeper (or its designee) shall identify for the Settlement Administrator (1) which, if any, of the Participant Class Members for whom the Settlement Administrator had calculated an Final Entitlement Amount became Former Participant Class Members since the date the Plan's recordkeeper (or its designee) provided the Settlement Administrator with information described in Section 3.2(a) herein, and (2) any Beneficiaries or Alternative Payees that have been identified since the Plan's recordkeeper (or its designee) provided the Settlement Administrator with information described in Section 3.2(a) herein and any other information necessary to carry out the Plan of Allocation.

c.      No later than fourteen (28) calendar days after receiving the information described in Section 5.4(b) herein and upon written notice to the Company, Defendants' Counsel and the Plan's recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of all monetary payments payable to Participant Class Members. The Plan's recordkeeper shall thereafter credit the individual Plan account of each Participant Class Member in an amount equal to that individual's Final Entitlement Amount.

d.      Each Participant Class Member's Final Entitlement Amount shall be invested in accordance with and in proportion to such Participant Class Member's investment elections then on file for new contributions to their Plan account. If the Participant Class Member does not have an investment election on file, then such individual shall be deemed to have directed payment of their Final Entitlement Amount to be invested in the Plan's qualified default investment alternative, as defined in 29 C.F.R. § 2550.404c-5.

e.      If, as of the date on which the Plan's recordkeeper credits the individual Plan account of each Participant Class Member with their Final Entitlement Amount, an individual believed to be a Participant Class Member no longer has a Plan account balance greater than $0.00, they will be treated as a Non-Rollover-Electing Former Participant Class Member for purposes of the settlement distribution only and will receive their payment from the Settlement Administrator in the form of a check as described in Section 5.5(a)(ii). If any such Participant Class Member's Final Entitlement Amount is less than $10.00, the Settlement Administrator shall still mail that Participant Class Member a check for their Final Entitlement Amount.

**5.5**      Payments to Former Participant Class Members.

a.      Each Former Participant Class Member will have the opportunity to elect a tax-qualified rollover of their Final Entitlement Amount to an individual retirement account or other

eligible employer plan, which they have identified on the Former Participant Rollover Form, provided that the Former Participant Class Member's Final Entitlement Amount is not less than $10.00 and they supply adequate information to the Settlement Administrator to effect the rollover.

i. <u>Rollover-Electing Former Participant Class Members.</u> Upon completing the calculation of each Participant Class Member and Former Participant Class Member's Final Entitlement Amount and no later than sixty (60) calendar days following the Settlement Effective Date, the Settlement Administrator shall effect a rollover from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Former Participant Class Member in their Former Participant Rollover Form, if the conditions for such rollover are satisfied and any associated paperwork necessary to transfer such Final Entitlement Amount by rollover has been provided. If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Former Participant Class Member as provided in their Former Participant Rollover Form, they will be treated as a Non-Rollover-Electing Former Participant Class Member.

ii. <u>Non-Rollover-Electing Former Participant Class Members.</u> Upon completing the calculation of each Class Member's Final Entitlement Amount and no later than sixty (60) calendar days following the Settlement Effective Date, the Settlement Administrator shall issue a check from the Qualified Settlement Fund to each Non-Rollover-Electing Former Participant Class Member whose Final Entitlement Amount is not less than $10.00, in the amount of each Former Participant Class Member's Final Entitlement Amount (less any withholdings).

**5.6**    <u>Payments to Beneficiaries and Alternate Payees.</u>

a.    Beneficiaries of Participant Class Members who are entitled to receive all or a portion of a Participant Class Member's Final Entitlement Amount under this Article shall receive

such settlement payments pursuant to the terms of the Plan. Beneficiaries of Former Participant Class Members who are entitled to receive all or a portion of a Former Participant Class Member's Final Entitlement Amount under this Article will receive such settlement payments under the methods described in Section 5.5 for Former Participant Class Members.

      b.     Alternate Payees of Participant Class Members who are entitled to receive all or a portion of a Participant Class Member's Final Entitlement Amount under this Article shall receive such settlement payments pursuant to the terms of the applicable Qualified Domestic Relations Order. Alternate Payees of Former Participant Class Members who are entitled to receive all or a portion of a Former Participant Class Member's Final Entitlement Amount under this Article will receive such settlement payments under the methods described in Section 5.5 for Former Participant Class Members.

      c.     The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

      **5.7**    <u>Notice of completion of Plan of Allocation.</u> Within ten (10) Business Days of completing all aspects of the Plan of Allocation, the Settlement Administrator shall, upon request, send to Class Counsel, Defendants' Counsel, and the Company one or more affidavits stating the following: (a) the name of each Class Member to whom the Settlement Administrator sent the Notices (and, for Former Participant Class Members, the Former Participant Rollover Form), and the address of such mailing; (b) the date(s) upon which the Settlement Administrator sent the Notices (and, for Former Participant Class Members, the Former Participant Rollover Form); (c) the name of each Class Member whose Notice was returned as undeliverable; (d) the efforts made by the Settlement Administrator to find the correct address and to deliver the Notice for each such

Class Member; (e) the name of each Class Member who submitted a Former Participant Rollover Form on or before the applicable deadline; (f) the name of each Class Member to whom the Settlement Administrator made a distribution from the Net Settlement Amount, together with the amount and form of the distribution, the name of the payee, the date of distribution, the amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable; and (g) the name of each Former Participant Class Member whose Final Entitlement Amount was less than $10.00.

**5.8**    Expiration of Checks and Disbursement of Undistributed Monies from the Qualified Settlement

a.    All checks issued in accordance with the Plan of Allocation shall be mailed to the address of each Class Member (or his or her Beneficiary or Alternate Payee) provided by the Plan's recordkeeper or any updated address obtained by the Settlement Administrator.

b.    All checks issued in accordance with the Plan of Allocation that are not cashed within one hundred twenty (120) calendar days of issuance shall be void and shall revert to the Qualified Settlement Fund. The voidance of checks shall have no effect on Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect. Any amounts that revert to the Qualified Settlement Fund, and any funds that cannot be distributed to Class Members for any other reason, together with any interest earned on them, and after the payment of any applicable taxes by the Escrow Agent, shall be transferred to the Plan's forfeiture account and treated as a forfeiture under the terms of the Plan, except that no such funds shall be used to reduce any Employer contribution (e.g., matching or profit sharing) under Section 4.3(e) of the Plan's terms. Under no circumstances will any such payments revert to the Company or any other Defendant.

**5.9**    <u>Responsibility for taxes.</u>

a.    The Parties acknowledge that any payments to Class Members may be subject to applicable tax laws. The Company, Defendants' Counsel, Class Counsel, and the Named Plaintiff will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement.

b.    Each Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold Defendants, the Named Plaintiff, Individual Fiduciary Committee Members, Individual Board Members, Defendants' Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

**5.10**    <u>Restorative Payments</u>. The Net Settlement Amount to be allocated and distributed to the Former Participant Class Members and to the Plan for distribution to the Participant Class Members in accordance with the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

**ARTICLE 6 – ATTORNEYS' FEES AND COSTS AND SERVICE AWARD**

**6.1**    <u>Attorneys' Fees and Costs.</u> No later than fourteen (14) calendar days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of

reasonable Attorneys' Fees and Costs, and Settlement Administrative Expenses (other than those tax-related expenses automatically deducted pursuant to Section 4.6), to be deducted from the Gross Settlement Amount. Defendants agree to take no position with respect to Class Counsel's application for Attorneys' Fees and Costs and Settlement Administrative Expenses, provided that the Independent Fiduciary has no objection to such Attorneys' Fees and Costs and Settlement Administrative Expenses. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for Attorneys' Fees and Costs, or Settlement Administrative Expenses, sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

**6.2**    Service Award. No later than fourteen (14) calendar days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of a Service Award to the Named Plaintiff in an amount not to exceed seven thousand five hundred U.S. dollars ($7,500.00). Defendants agree not to object to any such requested Service Award, provided that the Independent Fiduciary has no objection to such Service Award. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for the Service Award shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

## ARTICLE 7 – RELEASES AND COVENANT NOT TO SUE

**7.1**    Releases. Subject to Article 9 below, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiffs' Released Claims and Defendants' Released Claims.

a.      Upon the Settlement Effective Date, the Named Plaintiff and every Class Member (on behalf of themselves, their heirs, executors, administrators, successors, and assigns) and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) shall, with respect to each and every Plaintiffs' Released Claim, be deemed to absolutely and unconditionally, finally and forever release, relinquish and discharge each and every Plaintiffs' Released Claim that Named Plaintiff, the Class Members or the Plan directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have against any and all of the Released Parties, and forever shall be enjoined from prosecuting any such Plaintiffs' Released Claim, whether or not Class Members received the Notice, whether or not the Class Members received a payment in connection with this Settlement Agreement, whether or not Former Participant Class Members received the Notices and/or the Former Participant Class Member Rollover Form, whether or not Former Participant Class Members have executed and delivered a Former Participant Class Member Rollover Form or have missed the Former Participant Rollover Form Deadline, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

b.      Upon the Settlement Effective Date, Defendants, on behalf of themselves and their successors and assigns shall be deemed to fully, finally and forever release, relinquish and forever discharge the Defendants' Released Claims, and forever shall be enjoined from prosecuting any such claims.

c.      Nothing herein shall preclude any action to enforce the Settlement Agreement.

**7.2**     <u>Covenant not to sue.</u> As of the Settlement Effective Date, the Class Members and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) acting

individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to a U.S. Internal Revenue Service determination letter proceeding, a U.S. Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim adverse to the Released Parties on the basis of, in connection with, or arising out of any of Plaintiffs' Released Claims. Nothing herein shall preclude any action to enforce the Settlement Agreement.

7.3    The Named Plaintiff, Class Counsel, the Plan, or the Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Plaintiffs' Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants, or the decision to release, relinquish, waive, and discharge the Plaintiffs' Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member and the Plan shall expressly, upon the Settlement Effective Date, and by operation of the Final Approval Order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Plaintiffs' Released Claims, including Unknown Claims. The Class Members and the Plan acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

7.4    Upon the Settlement Effective Date, the Named Plaintiff, Class Members, and the Plan shall be conclusively deemed to, and by operation of the Final Approval Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the

33

future may have, under any law relating to the releases of unknown claims, including specifically Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Also, the Named Plaintiff and Class Members with respect to Plaintiffs' Released Claims shall, upon the Settlement Effective Date, waive any and all provisions, rights and benefits conferred by any law of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

**7.5** This Settlement Agreement does not in any way bar, limit, waive, or release any right by the Named Plaintiff or any Class Member to assert and/or recover any moneys resulting from any individual non-Released Claim, as described in Section 1.39, for individual vested benefits brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that are otherwise due under the terms of the Plan, or any rights or duties arising out of the Settlement Agreement.

## ARTICLE 8 – REPRESENTATIONS AND WARRANTIES

**8.1** Parties' representations and warranties. Defendants' Counsel, on behalf of Defendants, and Class Counsel, on behalf of the Named Plaintiff and Class Members, represent and warrant as follows, and each acknowledges that each other is relying on these representations and warranties in entering into the Settlement Agreement:

a.      they have carefully read the Settlement Agreement and understand its terms;

b.      they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations;

c.      they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary and appropriate;

d.      they assume the risk of mistake as to facts or law; and,

e.      they recognize that additional evidence may come to light, but they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement.

**8.2**      Signatories' representations and warranties. The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

## ARTICLE 9 – TERMINATION

**9.1**      <u>Right to terminate by each Party.</u> Each Party shall have the right to terminate and abandon the Settlement Agreement by providing written notice of their election to do so to the other Party no later than fourteen (14) calendar days after the occurrence of any of the following conditions:

a.      the Court declines to approve the Settlement Agreement or any material part of it;

b.      the Court declines to enter the Preliminary Approval Order or materially modifies the contents of the Preliminary Approval Order;

c.      the Independent Fiduciary does not approve the release or the Settlement Agreement, or disapproves the release or the Settlement Agreement for any reason whatsoever, or the Company reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by PTE 2003-39, and the Parties do not mutually agree to modify the terms of the Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39;

d.    the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order; or

e.    the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Settlement Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees and Costs or any Service Awards shall constitute grounds for termination of the Settlement Agreement.

**9.2**    Reversion to prior positions. If the Settlement Agreement is terminated in accordance with this Article, then the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, and any order entered by the Court pursuant to the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to the Company within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void, except as provided for in Section 9.3. The fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and the Parties expressly and affirmatively reserve all claims, remedies, defenses, arguments, and motions as to all claims and requests for relief that might have been or might later be asserted in the Action.

**9.3**    In the event that the Settlement Agreement is terminated, Settlement Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Settlement Administrative Expenses in excess of

the interest earned on the Qualified Settlement Fund shall be split evenly and paid by the Company and Class Counsel.

## ARTICLE 10 – NO ADMISSION OF WRONGDOING

**10.1**    The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only. Defendants and the Released Parties deny any and all wrongdoing or liability in connection with any claims which have been made or could have been made, or which are the subject of, arise from, or are connected, directly or indirectly, with or related in any way to the Action, including. The Released Parties deny that any violation of any law, rule, or regulation has ever occurred.

**10.2**    The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

a.    shall not be offered or received against Defendants, Individual Fiduciary Committee Members, Individual Board Members, or any of the Released Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission of the truth of any fact alleged by the Named Plaintiff or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation;

b.    shall not be offered or received against Defendants, Individual Fiduciary Committee Members, Individual Board Members, or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document;

c.      shall not be offered or received against Defendants, Individual Fiduciary Committee Members, Individual Board Members, or any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing; and

d.      shall not be construed against Defendants, Individual Fiduciary Committee Members, Individual Board Members, or any of the Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action.

## ARTICLE 11 –MISCELLANEOUS

**11.1**    <u>Exhibits included.</u> The exhibits to the Settlement Agreement are integral parts of this Settlement Agreement and are incorporated by reference as if set forth herein.

**11.2**    <u>Cooperation</u>. Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order.

**11.3**    <u>Non-disparagement</u>. The Named Plaintiff and Class Counsel will not publicly disparage Defendants, Individual Fiduciary Committee Members, or any Individual Board Members as to the Action, the Plan, or the Settlement.

**11.4**    <u>Confidentiality</u>. The Parties and their counsel shall keep strictly confidential, and shall not disclose to any third-party the terms and conditions of this Settlement Agreement until such time as the Named Plaintiff files his motion for preliminary approval of the Settlement.

**11.5**    <u>Entire agreement</u>. This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to the subject matter of the Action and supersede any prior agreement, whether written or oral, as to that subject matter. No representations or inducements have been made by any Party hereto concerning the Settlement

Agreement or its exhibits other than those contained and memorialized herein. The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

**11.6** Waiver. The waiver by any Party of a breach of the Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

**11.7** Construction of agreement. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Settlement Agreement is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to its preparation.

**11.8** Headings. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

**11.9** Governing law. The Settlement Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the state of Massachusetts without regard to any conflict of law doctrines, except to the extent that federal law requires that federal law govern, and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

**11.10** Disputes Concerning Compliance with Settlement Agreement. Class Counsel, Defendants' Counsel, and the Parties agree that any and all disputes concerning compliance with the Settlement Agreement shall be exclusively resolved as follows:

a.       If Class Counsel, Defendants' Counsel, or a Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, the party raising the dispute shall

first promptly give written notice under the Settlement Agreement to the other party including in such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; and (c) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the party raising the dispute;

b.    Within ten (10) business days after receiving the notice described in Section 11.10(a), the receiving party shall respond in writing with its position and the facts and arguments it relies on in support of its position;

c.    For a period of not more than ten (10) business days following receipt of the response described in Section 11.10(b), the Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute;

d.    If the dispute is not resolved during the period described in Section 11.10(c), either party may request that the Court resolve the dispute;

e.    In connection with any disputes concerning compliance with the Settlement Agreement, the Parties agree that each party shall bear its own fees and costs unless the Court orders otherwise.

**11.11**   Personal Jurisdiction. The Parties agree that the Court has personal jurisdiction over the Named Plaintiff, Class Members, and Defendants, and shall retain that jurisdiction for purposes of enforcing the Settlement Agreement and resolving any disputes concerning compliance with the Settlement Agreement.

**11.12**   Fees and expenses. Except as otherwise expressly set forth herein, each Party shall pay all fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors. Nothing in

the Settlement Agreement shall require Defendants or any Released Party to pay any monies other than as expressly provided herein.

      **11.13**  <u>Execution in counterparts.</u> The Settlement Agreement may be executed in one or more counterparts and may be executed by facsimile or electronic signature. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves signed counterparts.

      **11.14**  <u>Notices.</u> Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier as follows:

      a.  if to the Named Plaintiff:

        Paul M. Secunda
        WALCHESKE & LUZI, LLC
        235 N. Executive Drive, Suite 240
        Brookfield, Wisconsin 53005

      b.  if to Defendants:

        Alison V. Douglass
        GOODWIN PROCTER LLP
        100 Northern Avenue
        Boston, Massachusetts 02110

      **11.15**  <u>Retention of jurisdiction</u>. The Parties shall request that the Court retain jurisdiction of this matter after the Settlement Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement.

AGREED TO ON BEHALF OF NAMED PLAINTIFF David Daggett, as class representative on behalf of the Class Members, and on behalf of the Plan

Dated:  September 30, 2024

By:  *Paul M. Secunda*

Paul M. Secunda
WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
(414) 828-2372
psecunda@walcheskeluzi.com

AGREED TO ON BEHALF OF DEFENDANTS Waters Corporation, Waters Technologies Corporation, the Board of Directors of Waters Technologies Corporation, and the Employee Benefits Administrative Committee of Waters Technologies Corporation

Dated: September 30, 2024

By: _____

Alison V. Douglass
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02110
(617) 570-1000
ADouglass@goodwinlaw.com